PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2144
_____

MARYJO MILLER,
Individually and on behalf of her minor daughter, MM;
JAMI DAY, Individually and on behalf of her
minor daughter GK;
JANE DOE, Individually and on behalf of her minor
daughter, ND

v.

JEFF MITCHELL*, In his official capacity
as District Attorney of Wyoming County, Pennsylvania,

Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-09-cv-00540)
District Judge: Honorable James M. Munley
_____

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), District Attorney Jeff Mitchell was substituted for former District Attorney George Skumanick as appellant in this case.

Argued January 15, 2010

Before: AMBRO, CHAGARES, and
STAPLETON, Circuit Judges

(Opinion filed: March 17, 2010)

Michael J. Donohue, Esquire (Argued)
A. James Hailstone, Esquire
Kreder, Brooks, Hailstone & Ludwig
220 Penn Avenue, Suite 200
Scranton, PA   18504-0000

        Counsel for Appellant

Valerie A. Burch, Esquire
American Civil Liberties Foundation of Pennsylvania
105 North Front Street, Suite 225
Harrisburg, PA   17101-0000

Seth Kreimer, Esquire
University of Pennsylvania School of Law
3400 Chestnut Street
Philadelphia, PA   19104-0000

Mary Catherine Roper, Esquire
American Civil Liberties Union of Pennsylvania
P.O. Box 40008
Philadelphia, PA   19106-0000

Sara J. Rose, Esquire
Witold J. Walczak, Esquire (Argued)
American Civil Liberties Union
313 Atwood Street
Pittsburgh, PA   15213-0000

      Counsel for Appellees

Marsha L. Levick, Esquire
Juvenile Law Center of Philadelphia, Suite 400
The Philadelphia Building, 4th Floor
1315 Walnut Street
Philadelphia, PA   19107-0000

      Counsel for Amicus Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge

In 2008, the District Attorney of Wyoming County in Pennsylvania presented teens suspected of "sexting" with a choice: either attend an education program designed by the District Attorney in conjunction with two other agencies or face felony child pornography charges. Plaintiffs brought suit to enjoin the District Attorney from bringing criminal charges in retaliation for their refusal to attend the education program—an

3

act they allege is constitutionally protected—and immediately filed a motion for preliminary injunctive relief. The District Court granted their motion. While the case was on appeal, the District Attorney determined that he would not file criminal charges against two of the three plaintiff minors. As to the remaining minor, Nancy Doe, and her mother, Jane Doe, we agree with the District Court that they have shown a likelihood of success on the merits of their constitutional retaliation claims, and therefore they are entitled to preliminary injunctive relief. Accordingly, we affirm.

## I.    Factual and Procedural Background

Plaintiffs MaryJo Miller, Jami Day, and Jane Doe, mothers of, respectively, plaintiffs Marissa Miller, Grace Kelly, and Nancy Doe,[1] filed suit against the District Attorney of Wyoming County, in his official capacity only, alleging retaliation in violation of their constitutional rights. The allegations in their complaint center on the District Attorney's investigation and threatened prosecution of "sexting" by minors, and his requirement that plaintiffs attend an education program to avoid prosecution on child pornography charges.

"Sexting," as defined by plaintiffs, is "the practice of sending or posting sexually suggestive text messages and

---

[1] The District Court granted the motion of "Nancy Doe" and "Jane Doe" to proceed under pseudonyms.

4

images, including nude or semi-nude photographs, via cellular telephones or over the Internet." In October 2008, school officials in the Tunkhannock, Pennsylvania, School District discovered photographs of semi-nude and nude teenage girls, many of whom were enrolled in their district, on several students' cell phones.[2] The officials learned that male students had been trading these images over their cell phones, and turned the phones over to the Wyoming County District Attorney's Office. George Skumanick, then District Attorney, began an investigation.

In November 2008, Skumanick stated publicly to local newspaper reporters and an assembly at Tunkhannock High School that students possessing "inappropriate images of minors" could be prosecuted under Pennsylvania law for possession or distribution of child pornography, 18 Pa. Cons. Stat. § 6312,[3] or criminal use of a communication facility, 18 Pa.

---

[2] The facts are gleaned from plaintiffs' complaint, the evidentiary hearing, and the District Court's comprehensive opinion.

[3] Section 6312, titled "[s]exual abuse of children," makes it a crime to "cause[ ] or knowingly permit[ ] a child under the age of 18 years to engage in a prohibited sexual act . . . if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed." 18 Pa. Cons. Stat. § 6312(b).

Cons. Stat. § 7512.[4]  A few months later, Skumanick sent a letter to the parents of between 16 and 20 students[5]—students on whose cell phones the pictures were stored and students appearing in the photographs—threatening to bring charges against those who did not participate in what has been referred to as an "education program":

> [Child's Name] has been identified in a police investigation involving the possession and/or dissemination of child pornography.  In consultation with the Victims Resource Center and the Juvenile Probation Department, we have developed a six to nine month program which focuses on education and counseling.  If you[r] son/daughter successfully completes this program[,] no charges will be filed and no record of his/her involvement will be maintained.
>
> We have scheduled a meeting with all of the

---

[4] Section 7512 prohibits the use of a communication facility "to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony . . . ."  18 Pa. Cons. Stat. § 7512(a).

[5] Skumanick asserts that the program was offered to 13 girls and 3 boys, but plaintiffs' complaint alleges the letters were sent to approximately 20 students.

identified juveniles and their parents to discuss the program in more detail and to answer your questions. Following the meeting you will be asked to participate in the program. Participation in the program is voluntary. Please note, however, charges will be filed against those that do not participate or those that do not successfully complete the program.

The education program was divided into a Female Group and Male Group. The "Female Group" syllabus lists among its objectives that the participants "gain an understanding of what it means to be a girl in today's society, both advantages and disadvantages."

In the first session, students are assigned to write "a report explaining why you are here," "[w]hat you did," "[w]hy it was wrong," "[d]id you create a victim? If so, who?," and how their actions "affect[ed] the victim[,] [t]he school[, and] the community." The first two sessions focus on sexual violence, and the third on sexual harassment. The fourth session is titled "Gender identity-Gender strengths," and the fifth "Self Concept," which includes a "Gender Advantages and Disadvantages" exercise.

At the group meeting scheduled by the letter, held on February 12, 2009, Skumanick repeated his threat to bring felony charges unless the children submitted to probation, paid

7

a $100 program fee, and completed the education program successfully. One parent, whose daughter had appeared in a photo wearing a bathing suit, asked how his child could be charged with child pornography based on that picture. Skumanick responded that she was posing "provocatively." When plaintiff Marissa Miller's father asked Skumanick who decided what "provocative" meant, Skumanick refused to answer and reminded his audience he could charge all of the minors with felonies, but instead was offering the education program. He told Mr. Miller, "[T]hese are the rules[. I]f you don't like them, too bad."

He then asked the parents to sign an agreement assigning the minors to probation and to participation in the program. Only one parent did so. Skumanick gave the other parents one week to sign.

Before the meeting, Skumanick had shown plaintiff MaryJo Miller and her ex-husband the two-year-old photograph of their daughter, in which Marissa Miller and Grace Kelly, 12 or 13-years-old at the time, are shown from the waist up wearing white, opaque bras. Marissa was speaking on the phone, while Grace was making a peace sign. Despite Ms. Miller's protests that her daughter and friend were merely being "goof balls" and were not naked, Skumanick claimed the image constituted child pornography because they were posed "provocatively." He promised to prosecute them on felony child pornography charges if they did not agree to his conditions and attend the

8

proposed program.

After the meeting, Skumanick showed Jane Doe the photograph of her daughter Nancy, taken about a year earlier. In the photograph, Nancy is wrapped in a white, opaque towel, just below her breasts, appearing as if she just had emerged from the shower.

Eleven days later, on February 23, an administrator from Juvenile Court Services wrote the parents to inform them of an appointment scheduled for the following Saturday, February 28, at the Wyoming County Courthouse, "to finalize the paperwork for the informal adjustment." All of the parents and minors, except plaintiffs in this case, agreed to the conditions. The parties do not allege, and the record does not contain evidence of, any further communication between Skumanick and plaintiffs.

Plaintiffs filed suit on March 25, 2009, and immediately sought a temporary restraining order ("TRO") enjoining the District Attorney from initiating criminal charges against plaintiffs for the photographs. The District Court held a hearing the following day with both sides represented, and allowed the District Attorney to file a post-hearing brief in opposition. The District Court granted the requested relief on March 30, 2009, and the District Attorney timely filed an interlocutory appeal.

While this case was on appeal, Skumanick was defeated

by Jeff Mitchell in the November 2009 election. Mitchell took office in January 2010. We refer to Skumanick when detailing the events underlying the lawsuit.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331. We agree with the parties that the order titled a temporary restraining order by the District Court (a generally non-appealable order) was in effect a preliminary injunction (an appealable order) because it was entered for an indeterminate period of time after notice to the defendant and an adversary hearing. Under Fed. R. Civ. P. 65(b)(2), TROs expire 10 days[6] after issuance, subject to extension. *See In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982) (noting that we "will look beyond terminology to the actual content, purport, and effect of that which may otherwise be described as a temporary restraining order or as a preliminary injunction"). Therefore, we have appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

Ordinarily, we use a three-part standard to review a District Court's grant of a preliminary injunction: we review the Court's findings of fact for clear error, its conclusions of law *de novo*, and the ultimate decision to grant the preliminary

---

[6] After the order in this case, the time limit was extended from 10 days to 14 days. *See* Fed. R. Civ. P. 65(b)(2).

injunction for abuse of discretion. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). However, when First Amendment rights are at issue, we "must conduct an independent examination of the factual record as a whole." *Id.*

### III.    Preliminary Considerations

Before reviewing the grant of the injunction, we address two threshold arguments raised by the District Attorney on appeal. First, he argues that, given the existence of an ongoing state juvenile informal adjustment proceeding, we must abstain from entertaining plaintiffs' suit. Second, he argues that his promise made on appeal not to prosecute Miller or Day renders their case moot. We address each argument in turn.

### A.    Abstention

Under *Younger v. Harris,* 401 U.S. 37 (1971), federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding. We exercise plenary review over whether the requirements for abstention have been met. *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005).

According to the District Attorney, the offer of the education program as an alternative to prosecution was proposed under the informal adjustment procedure in 42 Pa. Cons. Stat.

11

§ 6323, and therefore a state criminal proceeding was pending against plaintiffs when they filed their complaint in federal court. This argument fails on two grounds.

First, while informal adjustment had been *offered* by the District Attorney, it had not begun because informal adjustment requires the consent of the parents and the minor. *See* Pa. Cons. Stat. § 6323(b)(2); *Commonwealth v. J.H.B.*, 760 A.2d 27, 32 (Pa. Super. Ct. 2000) ("Whatever [informal adjustment] procedure is undertaken flows from the consent of the child and his parent."); *Commonwealth v. C.L.*, 963 A.2d 489, 493 (Pa. Super. Ct. 2008) ("[T]he fee imposed could not be an informal adjustment as that term is intended by § 6323 because [the minor] did not consent to the fee."); *see also Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238–39 (1984) ("*Younger* is not a bar to federal court action when state judicial proceedings have not themselves commenced.").[7]  Indeed, the District Attorney argued in his brief to the District Court that "no prosecution has been initiated" and "charges . . . have yet to be brought." "Absent any *pending* proceeding in state tribunals, . . .

---

[7] *See also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31 (1975) (affirming a preliminary injunction against future criminal prosecutions, and holding that *Younger* did not apply because there was no pending state court proceeding); *Steffel v. Thompson*, 415 U.S. 452, 454 (1974) (where "a state prosecution has been threatened, but is not pending," federal declaratory relief is available).

12

application . . . of *Younger* abstention w[ould be] clearly erroneous." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (emphasis in original).

Second, even assuming an informal adjustment had begun, *Younger* abstention is appropriate "only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009) (citation omitted). That is not the case here.

Informal adjustment is not "judicial in nature," but a diversion away from the judicial system to a "public or private social agency." 42 Pa. Cons. Stat. § 6323(a)(1). It "invokes the court's social service and supervisory resources without implicating the court's formal and coercive powers, including the power to commit the child to custody or confinement." *J.H.B.*, 760 A.2d at 32; *see also id.* (describing informal adjustment as "a preliminary pre-petition procedure to provide assistance, counseling[,] and supervision, where the behavior is either socially disruptive (but not criminal) or where the delinquency has not created major or serious consequences"). Most importantly, the informal adjustment procedures provide no opportunity to raise federal claims (or, for that matter, any legal challenges). Therefore, *Younger* abstention is inappropriate here.

13

B.   Mootness

In his appellate brief, Skumanick stated that he "has determined that he will bring no criminal charges against Appellees[] Miller and Kelly," and "[t]he claims of Miller and Kelly are therefore moot."  Appellant's Br. at 4.  At oral argument, counsel for Mitchell confirmed that charges would not be brought against the two minors.  Oral Arg. Tr. at 3.

While it is curious that the District Attorney did not withdraw his appeal as to these two minors and their mothers and consent to a permanent injunction, Mitchell's counsel committed at oral argument to making formal the District Attorney's new position.  *Id.* at 3–4.  We accept counsel's representation to us, and agree that this appeal as to the minors Marissa Miller and Grace Kelly, and their mothers, MaryJo Miller and Jami Day, is mooted by the District Attorney's agreement to provide their requested relief.  *See DeJohn v. Temple Univ.*, 537 F.3d 301, 308–09 (3d Cir. 2008).  Thus, our analysis focuses only on the preliminary injunction as it applies to plaintiffs Nancy and Jane Doe.

### IV.   Discussion

A party seeking a preliminary injunction must satisfy the traditional four-factor test:  (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even

14

greater harm to the nonmoving party; and (4) the public interest favors such relief. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004).

We agree with the District Court's analysis of irreparable harm, harm to the non-moving party, and the public interest, *see Miller v. Skumanick*, 605 F. Supp. 2d 634, 646–47 (M.D. Pa. 2009), and therefore focus our discussion, as did the parties, on the first factor, likelihood of success on the merits.[8] At this stage, we "generally do[] not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success." *Child Evangelism Fellowship*, 386 F.3d at 524 (internal quotation marks and citation omitted).

---

[8] We reject the District Attorney's argument that irreparable injury would not occur if felony charges were filed because juvenile proceedings are closed, rehabilitative in nature, and Doe would have the right to counsel, the right to put the state to its burden of proof, and the benefit of state appellate court review. Because, as discussed below, the Does have shown a likelihood of success on the merits of their retaliation claim, they have necessarily shown that irreparable harm would result absent an injunction. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

A.     Plaintiffs' Legal Theory of Relief

To state a claim under § 1983, plaintiffs must show that the defendant, under the color of state law, deprived them of a federal constitutional or statutory right. *See Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). Plaintiffs base their claims on retaliation for the exercise of constitutionally protected rights, which "is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). To prevail on a retaliation claim, a plaintiff must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). At the preliminary injunction stage, plaintiffs need only show a reasonable probability that their retaliation claims will succeed on the merits. *McTernan*, 577 F.3d at 526.

The initial plaintiffs brought three causes of action in their complaint: (1) retaliation in violation of the minors' First Amendment right to free expression, the expression being their appearing in two photographs; (2) retaliation in violation of the minors' First Amendment right to be free from compelled speech, the speech being the education program's required essay explaining how their actions were wrong; and (3) retaliation in violation of the parents' Fourteenth Amendment substantive due process right to direct their children's upbringing, the

16

interference being certain items in the education program that fall within the domain of the parents, not the District Attorney.

The District Court granted injunctive relief based only on the second and third claims, and the parties did not brief the first claim before us. While we requested supplemental briefing on plaintiffs' first cause of action, we decline to consider it in the first instance. (Of course, plaintiffs may advance that cause of action on remand as the case proceeds on the merits.) Accordingly, we will consider only those causes of action addressed by the District Court and raised by the parties—the second and third claims.

Before going further, we focus on the act of retaliation urged by plaintiffs. We discern two possibilities based on plaintiffs' complaint and argument: (1) the District Attorney retaliated against plaintiffs when he threatened prosecution; and (2) any future prosecution would be an unconstitutional act of retaliation. As discussed below, only the second theory is viable.

The first theory—the theory accepted by the District Court—is that the District Attorney's "threatened prosecution is retaliation for the exercise of their First and Fourteenth Amendment rights for refusing to participate in the education program at issue here." *Miller*, 605 F. Supp. 2d at 643. In other words, plaintiffs asserted a constitutionally protected right to refuse to participate in the education program, and the District

17

Attorney responded to that assertion with threats to prosecute the minors for the sole purpose of coercing them to attend the program.

This claim presents a timing problem, as the District Attorney threatened to prosecute Doe *before* she refused to attend the program. Such a threat of prosecution was not retaliation "in response to" and "because of" the exercise of a right not to attend the program, as Doe had not yet asserted that right when the District Attorney made the threat to prosecute. Because this theory has a sequence flaw, we cannot affirm the District Court's grant of injunctive relief on this basis.[9] *Cf.*

_____

[9] Plaintiffs bring no direct constitutional claim, only claims of retaliation. Had they pled a direct constitutional violation, we would apply intermediate or strict scrutiny to determine whether the threats of prosecution unconstitutionally burdened or inhibited the exercise of their First and Fourteenth Amendment rights not to attend the education program. For an example of a direct constitutional claim based on the threat of prosecution, see *Porter v. Bowen*, 496 F.3d 1009, 1021, 1025 (9th Cir. 2007) (threat of prosecution that "severely burdened" expressive conduct protected by the First Amendment did not survive intermediate scrutiny); *see also Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006) (noting that courts may enjoin criminal prosecutions "in limited situations where the mere threat of prosecution would inhibit the exercise of constitutional freedoms"); *Aiello v. City of Wilmington*, 623 F.2d 845, 857 (3d Cir. 1980) ("An impermissible chill is created

*Wilkie v. Robbins*, 551 U.S. 537, 558 n.10 (2007) ("In the standard retaliation case recognized in our precedent, the plaintiff has performed some discrete act in the past, typically saying something that irritates the defendant official; the question is whether the official's *later* action against the plaintiff was taken for a legitimate purpose (firing to rid the work force of a substandard performer, for example) or for the purpose of punishing for the exercise of a constitutional right (that is, retaliation, probably motivated by spite). *The plaintiff's action is over and done with*, and the only question is the defendant's purpose, which may be maliciously motivated.") (emphases added); *Morón-Barradas v. Dep't of Educ.*, 488 F.3d 472, 481 (1st Cir. 2007) ("It is impossible for the DOE to have retaliated against Morón before she engaged in protected

---

when one is deterred from engaging in protected activity by the existence of a governmental regulation or the threat of prosecution thereunder."). Such a claim would not have a timing problem.

    A retaliation claim is different. It asks not whether the exercise of a right has been unconstitutionally burdened or inhibited (in other words, survives rational basis, intermediate scrutiny, or strict scrutiny review), but whether the Government is *punishing* the plaintiffs for exercising their rights. Under the doctrine of retaliation, "an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

19

activity."); *Durkin v. City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity. . . . [W]e have never held that an employer can retaliate when there has been no protected expression. An employer cannot retaliate if there is nothing for it to retaliate against.").

Plaintiffs' second theory—that a future prosecution would be the retaliatory act—does not suffer the same timing defect, as any prosecution will necessarily come after Doe's refusal to attend the program.[10] We discern this theory from plaintiffs' TRO motion before the District Court, which stated, "*Although the retaliation has not yet occurred*, it is 'of sufficient immediacy and reality to warrant the issuance' of an order enjoining the threatened prosecution." (Emphasis added.) Other statements in the same motion espouse this second theory: plaintiffs asserted they sought relief "to bar Skumanick *from bringing* the retaliatory criminal charges" for their refusal to attend the program, that "Skumanick has assured [them] that *he will retaliate* by filing" criminal charges, and that "plaintiff minors *would be* subject to an adverse action if they are

---

[10] While the record does not reveal that Doe expressly told the District Attorney she would not attend the program, the Does did not attend the February 28 meeting to finalize the informal adjustment paperwork, but instead filed this lawsuit. We think this sufficient as a refusal to attend the program.

20

prosecuted for child pornography." (Emphases added.)

The District Court also recognized plaintiffs' second variation on their retaliation claim, stating:

> Plaintiffs insist that retaliation exists here because (1) minor plaintiffs have a constitutional right to avoid the courses and their parents have a constitutional right to direct their education; (2) prosecution of the girls *would be* retaliation (an adverse action); and (3) because the girls' pictures were not illegal, the only reason to prosecute them *would be* in retaliation for exercising their constitutional right not to participate in the program.

*Miller*, 605 F. Supp. 2d at 643 (emphases added).

In other words, plaintiffs seek injunctive relief to prevent a future retaliatory act—an actual prosecution that has not yet been brought—from occurring. As discussed below, we affirm the District Court on this alternative ground.[11]  *See Ayers v.*

---

[11] The District Attorney does not raise, and we do not perceive, any problems regarding plaintiffs' standing or ripeness. Skumanick's direct and clear threat to prosecute establishes as real and immediate the danger Doe would be prosecuted when she refused to attend the education program.

21

*Philadelphia Hous. Auth.*, 908 F.2d 1184, 1196 (3d Cir. 1990) (affirming "on a different ground" the district court's denial of a preliminary injunction motion).

B.      Elements of Retaliation

1.      Constitutionally Protected Activity

Turning to the first element of a retaliation claim, we agree with the District Court that plaintiffs have shown a reasonable likelihood of establishing that coercing Doe's participation in the education program violated (a) Jane Doe's Fourteenth Amendment right to parental autonomy and (b) Nancy Doe's First Amendment right against compelled speech.

a.      Parent's Fourteenth Amendment Right

Parents have a Fourteenth Amendment substantive due process right "to raise their children without undue state interference." *Gruenke*, 225 F.3d at 303.[12] "Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as of basic importance

---

[12] While retaliation cases often are based on First Amendment rights, the doctrine applies when there is official retaliation for the exercise of "*any* constitutional right." *Anderson*, 125 F.3d at 162 (emphasis in original).

in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (internal quotation marks and citation omitted). Indeed, the "interest of parents in the care, custody, and control of their children[] is perhaps the oldest of the fundamental liberty interests," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), and is well-established by long-standing Supreme Court precedent. *See Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923) (recognizing that the Constitution protects the right of parents to "bring up children" and "to control the education of their own"); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534–35 (1925) (acknowledging parents' right "to direct the upbringing and education of" their children); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (observing the "cardinal" principle that "the custody, care and nurture of the child reside first in the parents"); *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972) (recognizing parents' right to instill in their children "moral standards, religious beliefs, and elements of good citizenship").

Here, Jane Doe objects to the education program's lessons in why the minors' actions were wrong, what it means to be a girl in today's society, and non-traditional societal and job roles. Appellees' Br. at 18–19. She particularly opposes these value lessons from a District Attorney who has "stated publicly that a teen[]age girl who voluntarily posed for a photo wearing a swimsuit violated Pennsylvania's child pornography

23

statute." *Id.* at 19. The program's teachings that the minors' actions were morally "wrong" and created a victim contradict the beliefs she wishes to instill in her daughter.

We agree that an individual District Attorney may not coerce parents into permitting him to impose on their children his ideas of morality and gender roles. An essential component of Jane Doe's right to raise her daughter—the "responsibility to inculcate moral standards, religious beliefs, and elements of good citizenship," *Gruenke*, 225 F.3d at 307—was interfered with by the District Attorney's actions. While it may have been constitutionally permissible for the District Attorney to offer this education voluntarily (that is, free of consequences for not attending), he was not free to coerce attendance by threatening prosecution.

Our case law and Pennsylvania's statutory law recognize that school officials have a "'secondary responsibility'" in the upbringing of children, and "in certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005) (*quoting Gruenke*, 225 F.3d at 307); 24 Pa. Stat. Ann. § 13-1317 ("Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, including the time required in going to and from their homes, as

24

the parents, guardians or persons in parental relation to such pupils may exercise over them."). We can say with assuredness, however, that the District Attorney is not imbued with that same "secondary responsibility." Indeed, we find no support for this proposition in any related statute, regulation, or case. The District Attorney is not a public education official, but a public law enforcement official. We do not express a view on the propriety of this program had it been offered as part of the school curriculum,[13] though we note that Jane Doe has a constitutionally protected right to choose the school her child attends, *see Runyon v. McCrary*, 427 U.S. 160, 178 (1976), a choice lacking in the current context.

We conclude that Jane Doe is likely to succeed in showing that the education program required by the District Attorney impermissibly usurped and violated her fundamental right to raise her child without undue state interference.

b.      Minor's First Amendment Right

Government action that requires stating a particular message favored by the government violates the First

---

[13] *Cf. Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 248 n.24 (3d Cir. 2008) (*per curiam*) (recognizing that federal courts "have held that parents have no right to exempt their child from certain subjects, reading assignments, community-service requirements[,] or assembly programs they find objectionable").

25

Amendment right to refrain from speaking. *C.N.*, 430 F.3d at 187;[14] *see also Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 641 (1994) (recognizing that "[g]overnment action that . . . requires the utterance of a particular message favored by the Government . . . contravenes th[e] essential right" to refrain from speaking protected by the First Amendment); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988) ("[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say.") (emphasis in original). A violation of the First Amendment right against compelled speech occurs "only in the context of actual compulsion," although that compulsion need not be a direct threat. *C.N.*, 430 F.3d at 189.

According to plaintiffs, the compelled speech arises from the program's requirement that the minors write a homework

---

[14] In *C.N.*, while we recognized that the "Supreme Court has only ever found a violation of the First Amendment right against compelled speech in the context of forced speech that requires the private speaker to embrace a particular government-favored message," we held that the First Amendment right against compelled speech is not limited to the government's requiring a speaker to express a certain viewpoint or message; requiring content-neutral speech may violate the First Amendment, although it will be subject to a different level of scrutiny than content-based requirements. 430 F.3d at 188.

26

paper explaining "how [their] actions were wrong." Jane and Nancy Doe do not agree that appearing in the photograph was wrong, and they assert that requiring Nancy Doe to write an essay to that effect "invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (holding that mandatory participation in Pledge of Allegiance violated children's First Amendment free speech rights). The compulsion here takes the form of the District Attorney's promise to prosecute Doe if she does not satisfactorily complete the education program.

We agree with the District Court at this preliminary stage that Nancy Doe likely can show that the education program would violate her First Amendment freedom against compelled speech. She would be required to explain why her actions were wrong (presumably as a *moral*, not a *legal*, matter) in the context of a program that purports to teach, as Mitchell's counsel described at oral argument, "[w]hat it means to be a girl; sexual self-respect, [and] sexual identity." Oral Arg. Tr. at 14. We see a fundamental distinction between this requirement and the oft-used and constitutionally sound requirement in pre-indictment or pre-trial diversion programs that a potential defendant acknowledge responsibility for his or her criminal conduct or admit wrongdoing. "[W]hat it means to be a girl in today's society," while an important sociological concern, in this case is a disconnect with the criminal and juvenile justice

27

systems. This mismatch is all the more troubling given the age of the program's participants. Minors often are more susceptible to external influences, and while this susceptibility may weigh in favor of certain educational or rehabilitative programs, it also cautions against allowing actors in the juvenile and criminal justice systems to venture outside the realm of their elected authority.

## 2. Government Responded with Retaliation

Under the second element of a retaliation claim, plaintiffs must show the Government responded with a retaliatory act. The test in our Circuit for determining whether an action is treated as retaliation is whether it is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks, citation, and alteration omitted). There is no doubt a prosecution meets this test, and the District Attorney does not argue otherwise. *See Hartman v. Moore*, 547 U.S. 250 (2006) (discussing retaliatory prosecution cases).

## 3. Causation

The third element of a retaliation claim connects the previous two—there must be a causal link between the protected activity (the first element) and the retaliatory act (the second element). Plaintiffs allege that there is no probable cause to prosecute Doe, and the District Attorney's only motive for

28

bringing a prosecution is to retaliate against her for refusing to attend the education program.[15]  We agree that plaintiffs have shown a likelihood of success on the causation prong of their retaliation claim, given the District Attorney's explicit statement that he will respond to (that is, retaliate for) Nancy Doe's failure to attend the education program, or not completing that program if she starts, by prosecuting her.  Among other examples, a letter signed by Skumanick states that "charges will be filed against those that do not participate or those that do not successfully complete the program."  He reiterated this threat at the February 12 meeting, and asserted on appeal unequivocally that "[Doe] could have refused to attend the class or write any essay and merely defended herself against the Juvenile Petition . . . ."  Appellant's Br. at 10.

By agreeing not to prosecute the minors if they attended and completed the program, the District Attorney's only motive

---

[15] We note that the constitutionality of the sexual abuse of children statute is not at issue (at least directly) in plaintiffs' second and third causes of action; plaintiffs instead challenge the constitutionality of the prosecutor's act of bringing a prosecution (no matter what the statute) to punish them for asserting their constitutional rights.  In this regard, we view plaintiffs' citation to *Steffel*, 415 U.S. at 462, 475, and *Wooley v. Maynard*, 430 U.S. 705, 710–15 (1977), as unhelpful because in those cases the plaintiffs alleged that the criminal statute directly violated their constitutional rights.

29

for bringing a prosecution against Doe would be, as he stated, a consequence of her not attending or completing it. In other words, it is uncontroverted that the District Attorney would not have brought criminal charges had Doe attended and completed the program. Of course, every offer of a pre-indictment diversionary program presents a choice potential defendants must make, and a prosecution brought after the offer of diversion is refused ordinarily is not considered retaliation. The difference here is the decision *not* to attend the program is constitutionally protected (at least at this stage plaintiffs have shown a reasonable likelihood this is so) for the reasons stated in Part IV.B.1.

That the District Attorney's motive in bringing a prosecution is likely retaliatory, rather than a good faith effort to enforce the law, is supported by the lack of evidence of probable cause. *See Hartman*, 547 U.S. at 265 ("[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision, *see Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (emphasizing that 'so long as the prosecutor has probable cause,' the charging decision is generally discretionary), and enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge."). Assuming that the sexual abuse of children law applies to a minor depicted in the allegedly pornographic photograph, and

30

that the photo in question could constitute a "prohibited sexual act"[16] (issues on which we need not opine), we discern no indication from this record that the District Attorney had any evidence that Doe ever possessed or distributed the photo. When asked at oral argument the basis for probable cause to charge Doe with possession or distribution of child pornography, Mitchell's counsel answered that it was "[t]he existence of that photograph . . . [,] the presence of that photograph on the cell phones of one or more of her . . . classmates." Oral Arg. Tr. at 20. But appearing in a photograph provides no evidence as to whether that person possessed or transmitted the photo. Mitchell's counsel could not make a representation to us as to whether the District Attorney had, at the time of the TRO hearing (which, we note, was months after Skumanick threatened to prosecute), any evidence of her transmission of the photo. Oral Arg. Tr. at 21. Despite ample

[16] "Prohibited sexual act" is defined as "sexual intercourse . . . , masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa. Cons. Stat. Ann. § 6312. This statute was amended during the pendency of this appeal, *see* H.B. 89, 193rd Gen. Assem., Reg. Sess. (Pa. 2009), but the amendments are not material to this case. The photograph of Doe could only fall under the last category—"nudity . . . depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction."

opportunity, the District Attorney has failed to present any semblance of probable cause.

The District Court may revisit this determination at a later date, and the District Attorney is free to move to vacate the injunction if he thinks he has secured probable cause. In *Hartman*, the Supreme Court held that plaintiffs bringing retaliatory prosecution claims must allege and prove lack of probable cause as an element of causation. 547 U.S. at 252. Therefore, if probable cause exists, the injunction must be lifted.

The suit in *Hartman* was brought against criminal investigators for inducing prosecution in retaliation for protected speech. A "distinct problem of causation" exists in retaliatory-inducement-to-prosecute cases, as a "causal gap" exists between the actor possessing the retaliatory animus (the government agent) and the other actor (the prosecutor) instituting the retaliation. *Id.* at 262–64. This "distinct problem of causation" does not exist here, as the same actor (the District Attorney) possesses the retaliatory motive and would institute the prosecution. However, given *Hartman*'s broad holding that probable cause must be pled and proven in retaliatory prosecution cases, and the Supreme Court's reliance on "the longstanding presumption of regularity accorded to prosecutorial decision making," *id.* at 263, we eschew any attempt to

distinguish *Hartman* from our case.[17] *See Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) (applying *Hartman*, even though the concerns regarding the intervening actions of a prosecutor did not apply—the officers themselves initiated the allegedly retaliatory grand jury proceedings—because the *Hartman* Court recognized that its rule swept broadly by stating that causation in retaliatory prosecution cases is "*usually* more complex than it is in other retaliation cases") (*quoting Hartman*, 547 U.S. at 261) (emphasis supplied in *Barnes*). Under *Hartman*, then, plaintiffs cannot succeed without proving an absence of probable cause.

Given that the only items of evidence in the record of the District Attorney's motive, at least at this preliminary stage, are (1) the existence of the photograph on another student's phone, and (2) the District Attorney's threat to prosecute for nonattendance at the education program, plaintiffs have established a reasonable likelihood of success as to causation.

In sum, absent an injunction, the Does would have to

---

[17] We note that *Hartman* did not anticipate actions for retaliatory prosecutions against prosecutors, as prosecutors ordinarily enjoy absolute immunity from damage liability. *See Hartman*, 547 U.S. at 261–62 ("A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute . . . .").

33

choose either to assert their constitutional rights and face a prosecution of Nancy Doe based not on probable cause but as punishment for exercising their constitutional rights, or forgo those rights and avoid prosecution. On the facts before us, this Hobson's Choice is unconstitutional. While "the Government retains broad discretion as to whom to prosecute," "the decision to prosecute may not be deliberately based on . . . arbitrary classification, including the exercise of protected statutory and constitutional rights." *Wayte v. United States*, 470 U.S. 598, 607–08 (1985) (internal quotation marks and citations omitted); *see also United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

We realize that considerations of comity, federalism, and prosecutorial discretion are implicated by this injunction, and that "judicial intrusion into executive discretion of such high order should be minimal." *Hartman*, 547 U.S. at 263. Indeed, there is a "presumption of regularity behind the charging decision," *id.* at 265, and "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364. Yet we "have a limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution," *United States v. Santtini*, 963 F.2d 585, 596 (3d Cir. 1992), and there

34

are rare instances where a federal court may assess the quantum of evidence underlying a threatened state prosecution. *See Brady v. United States*, 397 U.S. 742, 751 n.8 (1970) (suggesting that a prosecutor's broad authority may be questioned where "the prosecutor threatened prosecution on a charge not justified by the evidence"). This case presents one of those rare instances.[18]

\* \* \* \* \*

At this preliminary stage we conclude that plaintiffs have shown a likelihood of success on their claims that any prosecution would not be based on probable cause that Doe committed a crime, but instead in retaliation for Doe's exercise of her constitutional rights not to attend the education program. Therefore, we affirm the grant of a preliminary injunction and remand for further proceedings.

---

[18] This decision does not open the door to federal courts serving as a screening mechanism for state prosecutions. Before us is the unique circumstance of a prosecutor revealing unequivocally that a prosecution would be brought solely in response to a potential defendant's exercise of a constitutional right. As the Supreme Court noted in *Hartman*, these "[u]nambiguous admissions" are "likely to be rare." 547 U.S. at 264 n.10.