NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2825
_____

JOEY W. JACKSON,

Appellant

v.

DIVISION OF DEVELOPMENTAL DISABILITIES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 09-cv-05366)
District Judge:  Honorable Mary L. Cooper
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 17, 2010
Before: SMITH, FISHER and GARTH, Circuit Judges

(Opinion filed: September 21, 2010 )
_____

OPINION
_____

PER CURIAM

     Joey W. Jackson appeals pro se from the District Court's order dismissing his

complaint.  We will affirm.

Jackson suffers from a mental disability and is under the care of the New Jersey Division of Developmental Disabilities ("DDD"). He filed pro se a one-page complaint against the DDD, to which he attached several documents and a cover sheet citing the Americans with Disabilities Act of 1990 ("ADA") and the "Civil Rights Act of 1975."[1]

The complaint and its attachments can be liberally construed to assert two claims. First, the complaint states that the DDD "denied an emergency placement[] because of my dual diagnosis" and that Jackson wants placement "in better care housing." From a letter attached to the complaint, it appears that Jackson sought an emergency transfer from his housing with Allies, Inc., to an agency called NHS on the basis of unspecified "abuse and neglect." Second, Jackson states in the complaint that he wants a "protection order," and attached a letter from the New Jersey Department of Human Services Special Response Unit reporting that it had investigated Jackson's complaint about abuse and found it unsubstantiated. Thus, Jackson appears to complain of the manner in which the DDD resolved his complaints of abuse.[2]

---

[1]Jackson apparently refers to the Developmentally Disabled Assistance and Bill of Rights Act of 1975. The Supreme Court has held that this statute does not create substantive individual rights. See Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 n.21 (1981)

[2]Jackson later sent some 106 letters to the District Court over the course of the litigation complaining about virtually every aspect of his care. He also repeatedly called the District Court Clerk and the various judges assigned to this case and repeatedly appeared in person at the Clerk's office. This conduct led the District Court to issue an injunction on December 22, 2009, prohibiting Jackson from calling or appearing in person at the court until further order and directing him to communicate with the court

(continued...)

2

The DDD filed a motion to dismiss Jackson's complaint under Rule 12(b)(6), arguing that it fails to state a claim and that the District Court should abstain from hearing the suit under Younger v. Harris, 401 U.S. 37 (1971). By order entered June 14, 2010, the District Court granted the motion for several reasons, including the legal insufficiency of Jackson's complaint. Jackson appeals.[3]

II.

We agree that Jackson's complaint does not state a claim upon which relief may be granted, though for reasons somewhat different than those on which the District Court relied. As the DDD argues, Jackson's complaint and its attachments—no matter how

---

[2](...continued)
only in writing. Jackson appealed that order, but we dismissed his appeal for lack of jurisdiction because his notice of appeal was untimely. Jackson v. Div. of Developmental Disabilities, C.A. No. 10-1859 (June 6, 2010).

[3]We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's dismissal under Rule 12(b)(6) de novo. See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010). In doing so, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." Id. Pro se complaints are "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers[.]'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). The complaint, however, must contain allegations permitting "'the reasonable inference that the defendant is liable for the misconduct alleged.'" Mayer, 605 F.3d at 230 (citations omitted). In undertaking our review, we may consider exhibits attached to the complaint. See id. We may also affirm on any ground supported by the record. See Grayson v. Mayview State Hosp., 293 F.3d 103, 109 (3d Cir. 2002). In addition to dismissing Jackson's complaint, the June 14 order denied his requests for counsel and various forms of injunctive relief. We review both rulings for abuse of discretion, see Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993) (counsel); Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010) (injunction), and we perceive none here.

3

liberally construed—do not permit a reasonable inference that the DDD has engaged in any actionable conduct. His sole assertion is that the DDD "denied a[n] emergency placement[] because of my dual diagnosis." Thus, he appears to claim that the DDD discriminated against him under the ADA by denying him emergency reassignment on the basis of his disability. See 42 U.S.C. § 12132; Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). Jackson, however, has alleged nothing reasonably suggesting that it did, and the only inference reasonably permitted by the attachments to his complaint is to the contrary. Those attachments include an October 8, 2009 letter from the DDD to Jackson. The letter denies Jackson's request for emergency reassignment on the ground that he is not in imminent peril, but encourages him to pursue reassignment with his case manager in the ordinary course. Thus, it does not raise an inference that the DDD denied Jackson reassignment on the basis of his disability.[4]

Nor does Jackson's complaint permit the inference that the DDD may be liable for the manner in which it responded to his complaints of abuse (assuming, without deciding, that there may be some legal theory under which the DDD's conduct might potentially be actionable). The complaint itself seeks a "protection order," but it contains no actual

---

[4]To the contrary, documents attached to letters that Jackson has sent this Court indicate that he has since been transferred away from Allies as he originally requested. That transfer does not render this appeal moot because we read Jackson's filings to request a transfer to a facility somewhere outside of New Jersey, which from Jackson's filings does not appear to have occurred, but it does confirm that there is no merit to his claim that he has been "denied" reassignment, let alone on the basis of his disability.

allegations in that regard. Instead, it attaches a June 11, 2009 letter from the Special Response Unit stating that it investigated Jackson's complaint of abuse and that the documentary and testimonial evidence it reviewed showed the complaint to be unsubstantiated. Jackson has alleged nothing raising an inference that the DDD's actions were anything other than this letter describes them to be.

In sum, Jackson's complaint does not permit the reasonable inference that the DDD engaged in any actionable misconduct. Ordinarily, a plaintiff must be given leave to amend before his or her complaint is dismissed with prejudice on that basis. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). In this case, however, we have the benefit of the 106 letters that Jackson sent the District Court (as well as the over 50 letters that he has sent this Court during the pendency of his appeal). Regardless of whether these letters were properly filed with the District Court or with ours, they have given Jackson ample opportunity to elaborate on his claims. Like his complaint, however, they contain nothing suggesting that the DDD has engaged in actionable conduct. Thus, we are satisfied that any amendment of Jackson's complaint would be futile. See id.[5]

Accordingly, we will affirm the judgment of the District Court. Jackson's motion for the appointment of counsel is denied.

---

[5]The predominant theme of Jackson's letters is that he wants to be reassigned to housing in a different state. He also complains about virtually every aspect of his care, such as allegations that staff are "lazy," talk on their cellular phones, or otherwise fail to give him their undivided attention. While his letters often include assertions that staff "abused" and "neglected" him, he makes no specific colorable allegations in that regard.