**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3263
_____

J.R.; J.E.R., JR.; A.M., Individually and as natural parents on behalf of
J.G.R., A.S.R., M.J.R., and S.M.R., Minors,

v.

LEHIGH COUNTY; DONALD T. CUNNINGHAM, JR.; LEHIGH COUNTY OFFICE OF
CHILDREN & YOUTH SERVICES; PAMELA BUEHRLE; CYNTHIA CLAY; AMY
DOWD; PINEBROOK SERVICES FOR CHILDREN AND YOUTH, INC.; ROBERT M.
JACOBS; FOSTER PARENTS JOHN DOE 1, JANE DOE 1, JOHN DOE 2, AND JANE
DOE 2; CARBON LEHIGH INTERMEDIATE UNIT 21; ROBERT KEEGAN; JOHN
HOUSER; COLLEEN BESZ; VANCE FERRELL; SALISBURY TOWNSHIP; LARRY
UNGER; JAMES BROWN; NORMA CUSICK; ROBERT MARTUCCI; MARY YODER;
LINDA MINGER; ALLEN STILES, Police Chief; KEVIN SOBERICK; KYLE
REHATCHEK; OFFICER JOHN DOE 3;
OFFICER JOHN DOE 4

Jason Rose; James E. Rose, Jr.; Adriane Mills,
                                          Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5-09-cv-06207)
District Judge: Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 26, 2013

Before: SMITH, CHAGARES and SHWARTZ, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 2, 2013)

_____

## OPINION

_____

PER CURIAM

Appellants appeal from an order of the District Court granting summary judgment in favor of Lehigh County, Donald T. Cunningham, Jr., the Lehigh County Office of Children and Youth Services, Pamela Buehrle, Cynthia Clay, Amy Dowd (collectively "county Appellees"), Colleen Besz, and Vance Ferrell.[1]  For the following reasons, we will affirm the grant of summary judgment.

Appellants, individually and as natural parents on behalf of several minor children, filed suit against the Appellees seeking $14 million in damages for alleged violations of their constitutional rights, 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and state tort law.  The claims arose from an incident in January 2008 in which minor children of the adult Appellants were taken into protective custody pursuant to an oral, *ex parte* order from a judge of the Lehigh County Court of Common Pleas.

During the morning of Friday, January 25, 2008, then eleven-year-old G.L.R. (Appellant J.E.R., Jr.'s daughter) told her teacher and teacher's assistant (Appellees Besz and Ferrell) that her father's attorney had fondled her and her father did nothing to protect her.  Besz and Ferrell, who as teachers are required by state law to report sexual abuse complaints,

[1] Appellants' claims against the other defendants named in the caption of this case were previously dismissed by the District Court.  With the exception of the claim discussed in note 4, infra, the previously dismissed claims are not before the Court.  We consider only those claims addressed in the briefs filed by Appellants J.E.R., Jr and A.M., the sole appellants who may proceed in this appeal.

filed a report with the state's child abuse hotline. The Lehigh County Office of Children and Youth Services ("OCYS") evaluated the complaint. According to OCYS policy, G.L.R.'s firsthand report of abuse made directly to a mandated reporter constituted a "reliable referral." OCYS sought an emergency court order to remove minor children from Appellants' home based on the report of sexual abuse and the family's history with OCYS. OCYS obtained an oral, *ex parte* court order and took custody of Appellants' minor children on Friday, January 25, 2008, placing them in two separate foster homes. The children did not remain in foster care for long. One child was released on Saturday, January 26th. Another was released after a hearing on Monday, January 28th. The remaining children were released the next day, Tuesday, January 29th, after G.L.R. admitted her claim was false.

In her deposition, G.L.R. said she made up the claim because she wanted to live with her mother. She gave no indication to her teachers that she was lying, even though she knew her conduct was wrong. G.L.R. also testified that several weeks before she reported the lie, she told Appellee Ferrell that she wanted to live with her mother and he responded that she should make up a story to get out of her father's home. However, G.L.R. admitted that Ferrell did not give her specifics about what to say and that it was solely her decision to make up the claim of sexual abuse.[2]

Despite the short stay in foster care, Appellants claimed that their children were injured when they were removed from their home against their will, and that one child was placed in a home without necessary medication and was exposed to allergens. Although the Appellants

---

[2] Ferrell denied telling G.L.R. to make up a story, but the District Court assumed the truth of G.L.R.'s account for purposes of evaluating the summary judgment motions.

alleged numerous violations of their rights, only a few claims remained against the Appellees at the time they filed for summary judgment. These were due process claims stemming primarily from Appellants' allegation that the teachers and OCYS acted on G.L.R.'s complaint despite knowing that it was false. By order entered July 20, 2012, the District Court determined that the complained of actions did not rise to the level of due process violations and granted the Appellees' motions for summary judgment. This appeal followed.

We exercise jurisdiction under 28 U.S.C. § 1291 and review de novo the District Court's order granting summary judgment to Appellees. See Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). "Summary judgment should be granted only when the record 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). Summary judgment is appropriate when "the nonmoving party has failed to make a sufficient showing on an essential element of [the] case with respect to which [the nonmovant] has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Before turning to the due process claims, we must address two preliminary matters. First, we agree with the District Court's dismissal of all claims brought on behalf of the minor children. It is well-established in this Circuit that the right to proceed *pro se* in federal court does not give non-lawyer parents, such as the Appellants, the right to represent their children in proceedings before a federal court. See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882-83 (3d Cir. 1991). Second, we also agree with the District Court's application of the sham affidavit doctrine to reject an affidavit from G.L.R. "A sham affidavit

4

is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). The timing of the affidavit, whether there is a plausible explanation for the contradictory statements, and whether there is independent evidence in the record supporting the affidavit, may be considered when determining whether an affidavit is a sham. See EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 268-69 (3d Cir. 2010). In this case, G.L.R. submitted an affidavit that conflicted with her prior deposition testimony *after* the close of discovery and *after* the Appellees filed summary judgment motions. Whereas G.L.R. testified that only her teacher's assistant, Ferrell, told her to make up a story, in her affidavit she also implicated her teacher, Besz. In addition, she averred that Besz told her that "if your father hits you, it would be a way for you to get out of his home," contradicting her deposition testimony that she was never told what to say. No explanation was given for these contradictory accounts. In light of the questionable timing of the affidavit and the unexplained conflict with the prior deposition testimony, the District Court did not err by concluding that the affidavit was offered for the purpose of defeating summary judgment. Appellant J.E.R., Jr.'s contention that the District Court was "hostile" to G.L.R. does not undermine the court's reasonable application of the sham affidavit doctrine to reject her affidavit.

We now turn to Appellants' remaining claims against the teachers and the county Appellees. To establish a claim under 42 U.S.C. § 1983, "plaintiffs must show that the defendant, under the color of state law, deprived them of a federal constitutional or statutory

right." Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted). As the District Court noted, Appellants' claims regarding the fabricated tale of abuse and the responsive actions taken by Appellees sound in substantive due process. It is well-recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children. See Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999). But this liberty interest must be balanced against the government's compelling interest to protect children, and "does not include a right to remain free from child abuse investigations." Croft v. Westmoreland Cnty. Children & Youth Serv., 103 F.3d 1123, 1125 (3d Cir. 1997) (citation omitted). "[O]nly the most egregious official conduct" violates substantive due process. Miller, 174 F.3d at 375 (citation omitted). In other words, the complained of action "must be so ill-conceived or malicious that it 'shocks the conscience.'" Id. (citation omitted). Although this is a contextual analysis, we have warned that parents "cannot maintain a due process violation when the conduct complained of was devoid of any form of constraint or compulsion." Anspach ex rel. Anspach v. Philadelphia Dep't of Public Health, 503 F.3d 256, 264 (3d Cir. 2007).

Appellants claimed that the teacher's assistant, Ferrell, violated their rights by manipulating G.L.R. into lying about sexual abuse. The District Court concluded that G.L.R.'s decision to lie was her own, and that there was no evidence that she had been compelled or coerced to do so. The court relied on the facts that G.L.R. admitted that it was her decision to make up the lie; she knew what she was doing was wrong, and Ferrell did not give her specifics about what to say, and did not in any way control her. Moreover, accepting G.L.R.'s

6

version of events as true, Ferrell did not initiate the intrusion into G.L.R.'s family. Instead she came to him to find a way out of her father's home. Finally, Ferrell did not plant a new idea in G.L.R.'s mind: G.L.R. knew that the ploy might work because she had a prior history of fabricating allegations of abuse that resulted in removal from her father's home. Under these facts, the District Court concluded that G.L.R. had not been compelled or coerced by Besz and Ferrell to lie and, therefore, their actions did not shock the conscience in the constitutional sense.

Appellant J.E.R., Jr. argues that this case is akin to Morris v. Dearborne, 181 F.3d 657 (5th Cir. 1999), where a teacher's conduct was held to shock the conscience. That case, however, is factually distinguishable. In Morris, the teacher herself fabricated a story of abuse that the four-year-old alleged victim was incapable of doing on her own. Id. at 668. Here, an eleven-year-old was given the suggestion to lie, something she had already done in the past. Even taking into account G.L.R.'s emotional problems, as the District Court did, the fact still remains that she admitted she voluntarily lied. Accordingly, the District Court appropriately granted summary judgment to Besz and Ferrell because there was no issue of material fact regarding coercion.

Appellants contended that the county Appellees violated their substantive due process rights by seeking the *ex parte* court order for protective custody despite knowing that the report of abuse was false. They also contended that the Appellees refused to take instructions regarding one child's medical needs, and placed the children in foster homes where they were exposed to allergens and insects and referred to as "white." The District Court concluded that

these complained of actions did not "shock the conscience" because (1) there was no evidence in the record suggesting that the Appellees knew the report of abuse was false at the time they sought the court order; (2) there was uncontested evidence that OCYS informed the foster parents of the child's allergies and that the foster parents obtained his medication; and (3) any exposure to allergens and insects was limited because the children were returned to their natural parents within days. We agree with the District Court's analysis and conclude that the grant of summary judgment to the county Appellees on these claims was appropriate.

Finally, Appellants claimed that the county Appellees violated their procedural due process rights by not following a state statutory mandate to see G.L.R. immediately after receiving the report of abuse. They reason that, if this had happened, G.L.R. would have admitted the lie and the children would not have been taken into protective custody. The statute Appellants rely on states, in part, that "[u]pon receipt of each report of suspected child abuse, the county agency shall immediately commence an appropriate investigation and see the child immediately if emergency protective custody is required." 23 Pa. Cons. Stat. Ann. § 6368(a). G.L.R. apparently was not seen by OCYS until four days after the report of abuse. Whether OCYS followed a procedure required by state law, however, is not determinative of whether the agency violated Appellants' procedural due process rights under the Constitution. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted). In the child protective custody context, initiating proceedings by an *ex parte* court order is generally constitutional if a prompt post-deprivation hearing is held. See Miller, 174

F.3d at 372 n. 4. Although there is no bright-line rule for determining whether a post-deprivation hearing is prompt, the delay between taking a child into protective custody and holding a hearing should be measured in hours or days, rather than weeks. See e.g., Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003); Jordan v. Jackson, 15 F.3d 333, 351 (4th Cir. 1994). Here, a removal hearing was held on Monday, January 28, 2008, within seventy-two hours of the children being taken into protective custody.[3] No genuine issue of material fact exists as to whether the hearing was prompt in this case, and the District Court's grant of summary judgment in favor of the county Appellees on the procedural due process claim was appropriate.

For these reasons, we will affirm the judgment of the District Court.[4] We will dismiss the appeal as to Appellant J.R. for failure to prosecute. See L.A.R. 107.2.

---

[3] We note that the hearing took place within the timeframe required by state statute. See 23 Pa. Cons. Stat. Ann. § 6315(d). Appellants do not challenge the constitutionality of that statute. Nor do they challenge the OCYS policy that required OCYS to deem the report in this case to be a "reliable referral," which, in combination with the family's history with the agency, caused OCYS to seek emergency protective custody.

[4] Appellant J.E.R., Jr. also argues that police officers who assisted OCYS workers in removing the minor children violated his Fourth Amendment rights because they acted without probable cause. The District Court previously dismissed this claim because the officers acted pursuant to a court order and Appellants had not alleged any facts suggesting reckless disregard for the truth, fraud, or bad faith on the part of the officers in carrying out the order. We will affirm the District Court's disposition of this claim.

9