**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-3016

GENE STILP,

v.

JOHN J. CONTINO, Executive Director of the State
Ethics Commission, in his official capacity only;
THOMAS W. CORBETT, JR., Attorney General of
Pennsylvania, in his official capacity only,

Appellants.

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-09-cv-00524)
District Judge: Hon. Christopher C. Conner

Argued on May 11, 2010

Before: BARRY and ROTH, <u>Circuit Judges</u>
and HAYDEN\*, <u>District Judge</u>

(Opinion filed July 22, 2010 )

Thomas W. Corbett, Jr.
Attorney General
Howard G. Hopkirk, Esquire **(Argued)**
Calvin R. Koons, Esquire
Senior Deputy Attorney General
John G. Knorr, III, Esquire
Chief Deputy Attorney General
Office of the Attorney General
Appellate Litigation Section
Strawberry Square, 15th Floor
Harrisburg, PA 17120

            Counsel for Appellants

Aaron D. Martin, Esquire **(Argued)**
Hoppe & Martin, LLP
423 McFarland Road, Suite 100
Longwood Corporate Center South
Kennett Square, PA 19348

            Counsel for Appellee

---

\*Honorable Katharine S. Hayden, United States District Judge for the District of New Jersey, sitting by designation.

## OPINION

**ROTH**, Circuit Judge:

The Pennsylvania Attorney General and the Executive Director of the State Ethics Commission appeal the District Court's grant of a preliminary injunction enjoining enforcement of 65 Pa. Cons. Stat. § 1108(k), a state statute mandating confidentiality in proceedings before the State Ethics Commission. We agree with the District Court that this statute, to the extent it prohibits a complainant from disclosing his own complaint and the fact that it was filed, unconstitutionally constrains political speech. We will affirm the narrow preliminary injunction granted by the District Court.

## I. Background

Gene Stilp, plaintiff in this action, is a government watchdog who takes great pride in "publicly protesting actions of public officials within Pennsylvania state government." Stilp describes himself as "one of the best-known and most public protestors of fraud, waste and corruption within Commonwealth government." One of Stilp's tools for combating public corruption is the Pennsylvania Public Official and Employee Ethics Act (Ethics Act), 65 Pa. Cons. Stat. §§ 1101, *et seq.* However, the confidentiality provision of the Ethics Act precludes Stilp from publicizing the fact that he is filing a complaint with the State Ethics Commission. The limited question presented on appeal is whether, under the First Amendment, the state may subject Stilp to civil sanction or

3

criminal punishment for publicly disclosing his own complaint[1] and the fact that he has filed it – or intends to file it – with the State Ethics Commission.

## A. The State Ethics Act

The Pennsylvania Legislature enacted the Ethics Act to promote ethical conduct and integrity among individuals holding public office. The Ethics Act's statement of purpose provides:

> that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust.

*Id.* § 1101.1(a). The Ethics Act provides, *inter alia*, that "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest." *Id.* § 1103(a).

To implement and enforce the Ethics Act, the legislature authorized the creation of a State Ethics Commission empowered to "[m]ake recommendations to law enforcement officials either for criminal prosecution or dismissal of charges arising out of violations of [the Ethics Act]." *Id.* § 1107(15).

---

[1]As set out *infra*, disclosing the content of the complaint is protected under *First Amendment Coalition v. Judicial Inquiry and Review Board*, 784 F.2d 467 (3d Cir. 1986).

4

Defendant John J. Contino is Executive Director of the Ethics Commission.

The Ethics Act sets forth procedures for the filing and investigation of a complaint. Upon receiving "a complaint signed under penalty of perjury by any person or upon its own motion, the commission, through its executive director, shall conduct a preliminary inquiry into any alleged violation," to be completed within 60 days. *Id.* at § 1108(a). "If a preliminary inquiry establishes reason to believe that this chapter has been violated, the commission may, through its executive director, initiate an investigation to determine if there has been a violation." *Id.* § 1108(c).

The Ethics Act prohibits the filing of frivolous complaints, an infraction which the Ethics Commission is empowered to investigate. *Id.* § 1108(l). "Any person who willfully affirms or swears falsely in regard to any material matter" may be punished by a fine and five years' imprisonment. *Id.* § 1109(e). A person harmed by "wrongful use" of the Ethics Act, including the filing of frivolous complaints, is entitled to damages for:

(1) The harm to his reputation by a defamatory matter alleged as the basis of the proceeding.
(2) The expenses, including any reasonable attorney fees, that he has reasonably incurred in proceedings before the commission.
(3) Any specific pecuniary loss that has resulted from the proceedings.
(4) Any emotional distress that has been caused by the proceedings.

5

(5) Any punitive damages according to law in appropriate cases.

*Id.* § 1110.

Section 1108(k) of the Ethics Act, the provision challenged in this action, mandates confidentiality in all proceedings before the Ethics Commission. Absent exceptions inapplicable here, Section 1108(k) provides that "no person shall disclose or acknowledge to any other person any information relating to a complaint . . . which is before the commission." According to the Ethics Commission, Section 1108(k) does not prohibit a complainant from disclosing substantive allegations of unethical conduct, but it does prohibit a complainant from (1) disclosing the fact that a complaint has been filed with the Ethics Commission and (2) disclosing a plan or intent to file a complaint with the Ethics Commission. (A 158a, 226a-228a.) Violation of Section 1108(k)'s confidentiality mandate is punishable by a fine and one year's imprisonment. 65 Pa. Cons. Stat. § 1109(e).

## B. Stilp's Prior Ethics Act Petition

In November 2007, Stilp prepared an Ethics Act complaint alleging the improper use of public funds for political purposes by a prominent member of the state legislature. Before filing the complaint, Stilp issued a press release stating that "the Pennsylvania State Ethics Commission will be asked to investigate the use of taxpayer funds for political purposes. The contracts totaled $290,000 during 2007. [T]he complaint is attached." Stilp's press release successfully attracted media attention; at least three separate news articles reported the allegations asserted in his complaint. The Ethics Commission, however, declined to open an investigation and summarily dismissed Stilp's complaint one day after filing.

Unfortunately for Stilp, the publicity caused by his press release led the Investigative Division of the Ethics Commission to open an inquiry into whether Stilp had violated Section 1108(k). By letter of January 31, 2008, defendant Contino summarized the alleged violation:

> That Eugene Stilp, a (private citizen) violated [Section 1108(k)] when he publicly disclosed or caused to be disclosed that a complaint against a public official had been filed with the Commission by disclosing or acknowledging to other persons information relating to a complaint he was filing or filed with the State Ethics Commission regarding the conduct of The Majority Leader of The House Democratic Caucus by providing copies of the complaint to the media . . ..

On December 4, 2008, Stilp settled the matter by consent decree, admitting a violation of Section 1108(k) and paying a civil fine of $500. In its written adjudication, the Ethics Commission emphasized that Stilp violated Section 1108(k) by announcing his intention to file an Ethics Act complaint: "[T]he prohibition of Section 1108(k) of the Ethics Act encompasses a complaint that will be pending before the Commission."

This action, brought under 42 U.S.C. § 1983, asserts a facial challenge to the constitutionality of Section 1108(k). Stilp seeks declaratory and injunctive relief rendering the confidentiality provisions of Section 1108(k) unconstitutional and unenforceable on grounds that they abridge the freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution. Stilp wishes to file additional complaints under the Ethics Act, and to do so publicly, but fears civil sanction or criminal prosecution for violating Section

7

1108(k). Stilp, however, does not challenge the Ethics Commission's December 4, 2008, adjudication.

The District Court, following an evidentiary hearing at which Stilp and Contino testified, held that Stilp had satisfied the requirements for preliminary injunctive relief and issued an order enjoining defendants "from enforcing § 1108(k) against a complainant that discloses the fact that he or she filed a complaint with the Commission." Defendants appealed.

## II. Discussion

### A. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343; we have jurisdiction under 28 U.S.C. § 1292(a)(1).[2] We review the grant of injunctive relief involving First Amendment rights by "conduct[ing] an independent examination of the factual record as a whole." *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010) (quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)).[3]

---

[2] We have appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1292(a)(1).

[3] "Ordinarily, we use a three-part standard to review a District Court's grant of a preliminary injunction: we review the Court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision to grant the preliminary injunction for abuse of discretion." *Miller*, 598 F.3d at 145. The standard of review is more exacting in matters involving the First Amendment. *Id.*

**B.    Analysis of the District Court's Preliminary Injunction**

A district court may grant a preliminary injunction where the requesting party demonstrates "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller*, 598 F.3d at 147.

Because this action involves the alleged suppression of speech in violation of the First Amendment, we focus our attention on the first factor, *i.e.*, whether Stilp is likely to succeed on the merits of his constitutional claim. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").[4] Defendants concede that, if we find that Stilp is likely to succeed on the merits, the other requirements for a preliminary injunction are satisfied.

Section 1983 provides a civil remedy for violation of the United States Constitution by persons acting under color of law. 42 U.S.C. § 1983.  The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech," U.S. CONST. amend. I, thus affording broad protection from governmental intrusion for conduct involving expression. Although, when ratified, the First Amendment's limitation on

---

[4] In *Elrod*, the Court found injunctive relief was "clearly appropriate" where "First Amendment interests were either threatened or in fact being impaired at the time relief was sought." 427 U.S. at 373.

9

legislative power applied only to Congress, the guarantee of free speech was later applied to regulation by state government. *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (freedom of speech protected by the Due Process Clause of the Fourteenth Amendment). "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted). Content-based prohibition of such expression is "presumptively invalid." *United States v. Stevens*, 130 U.S. 1577, 1584 (2010).

Restrictions on speech are subject to strict scrutiny. "To survive strict scrutiny analysis, a statute must: (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008).

An overly-broad restriction is invalid on its face "if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Stevens*, 130 S.Ct. at 1587 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Vil. Hoffman Estates v. Flipside, Hoffman Estates*, Inc., 455 U.S. 489, 495 n.5 (1982).

Here, the Ethics Commission has construed Section 1108(k) to prohibit disclosure of the fact that an Ethics Act complaint has been, or will be, filed. In *Landmark Communications, Inc. v. Virginia*, the Supreme Court addressed the inherent constitutional tension created by confidential

10

governmental proceedings. 435 U.S. 829 (1978). The petitioner in *Landmark* asserted a facial challenge to a Virginia statute that prohibited disclosure of information concerning proceedings before the state Judicial Inquiry and Review Commission, empowered to investigate allegations of judicial misconduct. The statute prohibited disclosing the identity of the judge under investigation and classified the offense as a misdemeanor.

The Virginian Pilot, a Landmark newspaper, obtained and published accurate information about a pending judicial inquiry, including the identity of the judge under investigation and the fact that a formal complaint had not yet been filed. In response, a state grand jury indicted Landmark for violating the confidentiality statute. At trial, testimony revealed that Landmark believed the confidentiality statute applied only to parties appearing before the Review Commission. Because Landmark never entered an appearance in the proceeding, Landmark's editors believed it was lawful to publish information concerning a matter of public importance. The state trial court disagreed. It held the statute was applicable to non-participants and found Landmark guilty.

Landmark appealed to the Virginia Supreme Court, which applied the "clear and present danger" test to balance the government's interest in preserving confidentiality against Landmark's right of publication under the First Amendment. The Virginia Supreme Court identified three state interests advanced by confidentiality:

> (a) protection of a judge's reputation from the adverse publicity which might flow from frivolous complaints, (b) maintenance of confidence in the judicial system by preventing the premature disclosure of a complaint before the Commission has determined that the charge is

11

well founded, and (c) protection of complainants and witnesses from possible recrimination by prohibiting disclosure until the validity of the complaint has been ascertained.

*Id.* at 833. Concluding that the Review Commission could not function without confidentiality, the Virginia Supreme Court held that the statute was "indispensable to the suppression of a clear and present danger posed by the premature disclosure of the Commission's sensitive proceedings -- the imminent impairment of the effectiveness of the Commission and the accompanying immediate threat to the orderly administration of justice." *Id.*

The United States Supreme Court granted Landmark's petition for review and reversed. The Court began its analysis by enumerating the state interests putatively advanced by confidentiality: (1) encouraging the filing of complaints and participation of witnesses, (2) insulating judges from reputational harm caused by frivolous complaints, (3) maintaining confidence in the judiciary by avoiding premature disclosure of frivolous claims, and (4) creating an incentive for judges to resign voluntarily to avoid negative publicity. *Id.* at 835-36. The Court found those interests, while legitimate, were insufficient to justify imposing criminal sanctions for engaging in "speech that would otherwise be free." *Id.* at 841-42. Quoting Justice Frankfurter, the Court explained that "speech cannot be punished when the purpose is simply 'to protect the court as a mythical entity or the judges as individuals or as anointed priests set apart from the community and spared the criticism to which in a democracy other public servants are exposed.'" *Id.* at 842.

The Court then considered whether the First Amendment limits the contempt power of courts to impose punishment for

12

judicial criticism and statements interfering with grand jury investigations. *See Bridges v. California*, 314 U.S. 252 (1941) (reversing contempt convictions);[5] *Pennekamp v. Florida*, 328

---

[5]In *Bridges*, the first case in this line, California state courts convicted the petitioners for contempt because they publicly criticized judicial rulings in pending cases. The Supreme Court reversed, finding the asserted state interests of preventing judicial indignity and the disorderly administration of justice insufficient to punish petitioners' statements:

> [W]e are convinced that the judgments below result in a curtailment of expression that cannot be dismissed as insignificant. If they can be justified at all, it must be in terms of some serious substantive evil which they are designed to avert. The substantive evil here sought to be averted . . . appears to be double: disrespect for the judiciary; and disorderly and unfair administration of justice. The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.

*Bridges*, 314 U.S. at 270-71.

13

U.S. 331 (1946) (same); *Craig v. Harney*, 331 U.S. 367 (1947) (same); *Wood v. Georgia*, 370 U.S. 375 (1962) (reversing contempt conviction where there was no evidence that petitioner's statements actually interfered with grand jury investigation). The *Landmark* Court found this line of authority broadly protects the freedom of expression:

> What emerges from these cases is the working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished, and that a solidity of evidence is necessary to make the requisite showing of imminence. The danger must not be remote or even probable; it must immediately imperil.
>
> . . . The threat to the administration of justice posed by the speech and publications in *Bridges*, *Pennekamp*, *Craig*, and *Wood* was, if anything, more direct and substantial than the threat posed by Landmark's article. If the clear-and-present-danger test could not be satisfied in the more extreme circumstances of those cases, it would seem to follow that the test cannot be met here.

*Landmark* at 435 U.S. at 844-45 (internal quotation marks and citations omitted). In holding the Virginia confidentiality statute unconstitutional, the Court explained that the need for confidentiality must yield to the First Amendment: "It is true that some risk of injury to the judge under inquiry, to the system of justice, or to the operation of the Judicial Inquiry and Review Commission may be posed by premature disclosure, but the test

14

requires that the danger be 'clear and present' and in our view the risk here falls far short of that requirement." *Id.* at 845.[6]

Defendants argue that *Landmark* is distinguishable because the Virginian Pilot was a third party with no involvement in the judicial review proceeding, whereas here, Stilp is the party who seeks to initiate an Ethics Act proceeding. Defendants contend that, unlike third parties, if Stilp chooses to utilize the Ethics Act as a forum for political debate, then he must abide by Section 1108(k)'s confidentiality mandate. We reject this distinction on two grounds. First, the purported harm caused by disclosing the fact that a complaint was filed does not vary according to the identity of the disclosing party. Second, the complainant's interest in publicizing his own political speech is certainly as strong, if not stronger, than the interests of third parties in publicizing such speech. We therefore find that *Landmark* establishes the proper analytical framework.

Although *Landmark* involved a judicial misconduct proceeding, we are not alone in applying *Landmark* to review the constitutionality of confidentiality requirements in non-

---

[6] Defendants cite *Kamasinski v. Judicial Review Council*, holding constitutional a statute prohibiting disclosure of the fact that a complaint was filed with the Connecticut Judicial Review Council. 44 F.3d 106 (2d Cir. 1994). There, the Second Circuit found the state's interest in confidentiality justified to (1) prevent harassment of judges from frivolous complaints, (2) avoid publicity causing witnesses to withhold testimony, and (3) encourage infirm or incompetent judges to resign voluntarily. *Id.* at 111. We are not bound by *Kamasinski*, nor are we persuaded that the interests identified there justify Section 1108(k)'s analogous prohibition under the circumstances presented here.

judicial governmental proceedings. In *Lind v. Grimmer*, for example, the Ninth Circuit Court of Appeals considered the constitutionality of a state statute mandating confidentiality in matters before the Hawaii Campaign Spending Commission. 30 F.3d 1115 (9th Cir. 1994). The plaintiff publicized a complaint filed with the Spending Commission and asserted a facial challenge to the statute's confidentiality provision. In defense of the provision, the Spending Commission identified five governmental interests putatively justifying the prohibition on disclosing the fact that a complaint was filed:

> (a) to prevent the Commission's credibility from being invoked to support "scandalous charges," (b) to protect "fledgling political groups and candidates [from] the publicity that would befall them from open proceedings," (c) to prevent candidates and their supporters from being "unduly tarred by a vindictive complaint," (d) to promote settlement of disputes over violations of spending laws, and (e) to eliminate distractions and collateral concerns that would exist if commission proceedings were made public.

*Id.* at 1117-18. To overcome strict scrutiny, the Spending Commission argued that its compelling interests in confidentiality promoted "free functioning of the electoral system" and "foster[ed] an 'uninhibited, robust, and wide-open' debate out in the political arena." *Id.* at 1119.

The court agreed that the latter two interests were compelling but found that "prohibiting disclosure that a complaint has been filed does little to serve these interests, and indeed in many ways is antithetical to them." *Id.* The court found the statute "presumptively unconstitutional" as a content-based regulation of "speech about political processes and

16

governmental investigations of wrongdoing by public officials, [which] falls near to the core of the First Amendment." *Id.* at 1118. The court rejected the Spending Commission's argument that confidentiality was necessary to avoid creating the appearance of crediting frivolous or false allegations of spending violations: "Because the State has no influence over when or whether a complaint is filed, the fact of filing simply cannot signal the State's approval of a complainant's charges." *Id.* at 1119. The court distinguished the need for secrecy in the grand jury context where there are stronger justifications for confidentiality (*i.e.*, the imprimatur of official suspicion is unavoidable upon disclosure and pre-arrest disclosure creates the potential for flight). *Id.* The court, relying on *Landmark* throughout, concluded that the statute was fatally overly-broad and "nothing short of a complete rewrite of the statute will save it." *Id.* at 1121. We find *Lind* persuasive and defendants make no attempt to distinguish it.

Defendants, however, contend that *First Amendment Coalition v. Judicial Inquiry & Review Bd.*, 784 F.2d 467 (3d Cir. 1986) (en banc), supports their argument that Section 1108(k) is constitutional. We disagree. *First Amendment Coalition* addressed a Pennsylvania statute mandating confidentiality in proceedings before the state Judicial Inquiry and Review Commission. Two issues were presented on appeal: (1) whether and when the public had a right of access to information from confidential proceedings, and (2) whether two witnesses whose testimony was subpoenaed during a judicial review proceeding could be restrained from disclosing the contents of their testimony.

The first issue, the right of access, is inapposite because this appeal concerns only the right of publication. In *First Amendment Coalition*, we expressly distinguished the right of access from the right of publication: "In general, the right of

17

publication is the broader of the two, and in most instances, publication may not be constitutionally prohibited even though access to the particular information may properly be denied."[7] 784 F.2d at 472.

The second issue, the right to disclose one's own testimony compelled by subpoena, while not bearing directly on whether the state may prohibit disclosing the fact that a complaint was filed with the Ethics Commission, is relevant because the fact of filing the complaint, like the contents of a witness's own testimony, is not information that was gleaned from the confidential proceedings before the Commission.

In *First Amendment Coalition*, we found that prohibiting a witness from disclosing his own testimony ran afoul of the First Amendment:

> The curb on disclosing the witness's testimony applies to information obtained from sources

---

[7]Quoting Chief Justice Warren, we explained:

There are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased [access to information]. For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right. The right to speak and publish does not carry with it the unrestrained right to gather information.

*Id.* at 474.

18

outside as well as inside the Board. In short, a person having any knowledge about the conduct of a judge, favorable or otherwise, might be forever barred from speaking, writing, or publishing it if he testified about that information before the Board. We find no state interest strong enough to justify such a sweeping measure.

*Id.* at 478. We observed that the requirement of confidentiality may be reasonable in certain applications, but the statute's prohibition on disclosure was not narrowly-tailored when applied to a witness's own testimony. *Id.* at 479.

By analogy, because the disclosure of the filing of the complaint would divulge neither confidential testimony of other witnesses nor confidential statements by members of the Ethics Commission, we conclude that it falls within the class of expression protected under *First Amendment Coalition*. For this reason, defendants' reliance on *First Amendment Coalition* is misplaced.

Turning to the facts of this case, defendants, in defending their position, contend that Section 1108(k) survives strict scrutiny on the basis of six purportedly compelling governmental interests. They state these interests in their brief as follows:

First, the confidentiality provisions prevent individuals from disclosing the filing of complaints in order to manipulate the electoral process. Second, they prevent individuals from using the complaint process as a means of retaliation. Third, the confidentiality provisions prevent individuals from using the complaint process to undermine ongoing investigation of

19

them in another matter (e.g. complaint filed with the Commission against public official who has provided information to another agency which has then initiated criminal or civil investigation). Fourth, they allow State Ethics Commission to carry out investigations more effectively. Fifth, they prevent the damage to the reputation of government officials where the allegations were unfounded.[8] Sixth, the confidentiality provisions prevent individuals from filing complaints with the Commission in an attempt to unduly influence the decision of another governmental body.

We find the state interests asserted here are either identical to or less persuasive than those rejected in *Landmark*. For example, the first asserted interest purportedly prevents election manipulation. Defendants claim that, without confidentiality, a partisan individual could file and publicize a frivolous ethics complaint on the eve of an election for the purpose of undermining a political opponent's campaign. Defendants claim that, because the Ethics Act requires the Commission to open a preliminary inquiry in all cases, the public might perceive the Commission's inquiry as lending credibility to the allegations even if frivolous. Defendants claim that voters may be left with the impression that a frivolous ethics complaint has merit and vote against the wrongly-besmirched candidate.

This state interest, even if compelling, seems implausibly served by Section 1108(k)'s prohibition on disclosure of a filed complaint. First, there is no meaningful difference between

---

[8] Defendants "concede that this interest, at least by itself, does not rise to the level of a compelling state interest under the First Amendment." Appellants' Br. at 9.

20

publicizing allegations of unethical conduct on the eve of an election and doing so while also disclosing that an Ethics Act complaint was filed with the Commission. Either way, publicizing the allegation might conceivably affect the election. Such speech, unless false and malicious, is manifestly protected by the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (honest misstatements of fact about public officials protected from defamation liability under the First Amendment, but false statements made with malice are not). Second, the Ethics Act's requirement that every complaint receive a preliminary inquiry would not inexorably lend credibility to the substance of an alleged ethics violation. If voters are knowledgeable enough to understand that the Ethics Act requires preliminary inquiry into all complaints, then they are unlikely to misperceive such perfunctory review as endorsing frivolous factual allegations. The Ninth Circuit rejected this argument in *Lind*, 30 F.3d at 1119, and we reject it here.

We decline to address with specificity our finding that the other state interests asserted by defendants, even if compelling (a question we need not reach), are insufficiently served by Section 1108(k)'s disclosure prohibition. We simply note that they are indistinguishable from the interests presented to and rejected by the *Landmark* court. The harm caused by disclosing the fact that an Ethics Act complaint was filed, regardless of whether the complaint was frivolous or meritorious, is too negligible and remote to justify a blanket prohibition on such disclosure.

To the extent the state has a compelling interest in preventing harm caused by frivolous or wrongful filings, Section 1108(k) is not narrowly-tailored to achieve that interest. Filing and publicizing frivolous or false ethics complaints are independently proscribed by the Ethics Act, which subjects the

21

filer to civil and criminal sanctions under Sections 1109(e) and 1110, as well as common law tort liability for defamation to the extent cognizable under *New York Times Co. v. Sullivan*. Those sanctions render Section 1108(k)'s prohibition cumulative and unnecessary.

We hold that Section 1108(k), as construed by defendants to prohibit public disclosure of the fact that an Ethics Act complaint was filed, does not survive strict scrutiny and cannot be enforced. A blanket prohibition on disclosure of a filed complaint stifles political speech near the core of the First Amendment and impairs the public's ability to evaluate whether the Ethics Commission is properly fulfilling its statutory mission to investigate alleged violations of the Ethics Act.

When Stilp publicly disclosed his filing of an Ethics Act complaint in November 2007, his disclosure was protected under the First Amendment. Stilp does not challenge the Ethics Commission's December 4, 2008 adjudication of liability in this action, but he is entitled to injunctive relief foreclosing future enforcement of Section 1108(k) to the extent it prohibits public disclosure of an Ethics Act complaint filed with the Ethics Commission. Thus, Stilp is likely to succeed on the merits of his constitutional challenge. The District Court did not err in granting a preliminary injunction enjoining defendants from enforcing that aspect of Section 1108(k).

## III.  Conclusion

For the above reasons, we will affirm the order by the District Court granting the  preliminary injunction and remand this case for further proceedings consistent with this opinion.

22