PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3124
_____

IN THE MATTER OF THE APPLICATION OF
SUBPOENA 2018R00776

ABC Corporation,

Appellant
_____

Appeal from the United States District Court
_____

Argued on December 10, 2019

Before: RESTREPO, ROTH and FISHER, Circuit Judges

(Opinion filed January 10, 2020)

_____

OPINION
_____

ROTH, <u>Circuit Judge</u>

This case requires us to determine whether the First Amendment permits a court, acting pursuant to the Stored Communications Act (SCA),[1] to restrain a grand jury witness from disclosing its receipt of service to a third party. A grand jury issued a subpoena to ABC Corp.,[2] an electronic service provider, for the data of one of its customer's employees who was under criminal investigation. A search warrant later demanded additional data regarding the same subscriber. These requests were accompanied by nondisclosure orders (NDOs) prohibiting ABC Corp. from notifying anyone of the existence of the data requests. ABC Corp. complied with both requests but challenges the constitutionality of the NDOs, arguing that they infringe upon its freedom of speech. ABC Corp. asks to amend the NDOs to permit disclosure to an individual who, it argues, poses no risk to the grand jury investigation. We must determine whether the First Amendment tolerates such a restraint on speech.

Our conclusion, which we explain below, is that the governmental interest in maintaining grand jury secrecy is sufficiently strong for the NDOs to withstand strict scrutiny. Disclosure to anyone outside of the grand jury process would undermine the proper functioning of our criminal justice system. We will affirm the District Court's denial of ABC Corp.'s motion to amend the NDOs.

---

[1] 18 U.S.C. § 2701, *et seq.*

[2] To maintain the secrecy of the investigation, we will refer to the facts in general terms and will use for the corporation the fictitious name of "ABC Corp."

# I. Background

## A. Statutory Background

The Stored Communications Act of 1986 (SCA) is "designed to protect legitimate law enforcement needs while minimizing intrusions on the privacy of system users as well as the business needs of electronic communications system providers."[3] The SCA authorizes the government to compel an electronic service provider to produce a subscriber's information stored on remote servers, often referred to as "the cloud."[4] The advent of cloud computing has altered how the government obtains information during criminal investigations.[5] Where information was previously sought by directly approaching the target of the investigation or his employer, the SCA permits prosecutors to obtain the data from electronic service providers.[6]

Section 2703 of the SCA allows the government to obtain search warrants, court orders, or subpoenas for a subscriber's data. These requests may be for non-content-specific data,[7] such as name, address, and product-usage information, or content-specific data,[8] including the contents of all communications, search histories, and saved files. A

---

[3] 132 Cong. Rec. 27633 (1986) (statement of Sen. Leahy).
[4] U.S. Dep't of Justice, *Seeking Enterprise Customer Data Held by Cloud Service Providers*, at 1 (Dec. 2017).
[5] *Id.*
[6] *Id.*
[7] 18 U.S.C. § 2703(c).
[8] *Id.* § 2703(a), (b).

service provider who turns over this information in response to a grand jury subpoena, as is the case here, is a grand jury witness and is not subject to the general secrecy obligation imposed by the Federal Rule of Criminal Procedure 6(e)(2).[9] However, the SCA authorizes courts to prohibit a service provider from notifying anyone of its receipt of legal process in appropriate circumstances.[10]

We have not had the opportunity to analyze the SCA's nondisclosure provision.[11] Section 2705(b) governs those occasions when the government may request that a court issue an NDO to service providers. That provision, in relevant part, states:

> **Preclusion of notice to subject of governmental access.** A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may

---

[9] Notes of Advisory Committee, Note to Subdivision (e)(2); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) ("[Grand jury w]itnesses are not under the prohibition unless they also happen to fit into one of the enumerated classes [listed in the Federal Rule of Criminal Procedure 6(e)(2)].").

[10] 18 U.S.C. § 2705(b).

[11] We thank the parties for their additional late-hour briefing on this issue.

> apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order.[12]

The SCA thus permits the government to apply for an NDO when it seeks content or non-content data pursuant to § 2703 unless the government itself is required to notify the subscriber of the request.[13] Even when the government must notify the subscriber, it may still obtain an NDO if it may delay notification pursuant to § 2705(a). A court shall issue an NDO if it finds reason to believe that disclosure will result in "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial."[14] When these risks are present, an NDO prohibits an electronic service provider from disclosing the government's request for data for up to one year.[15]

---

[12] 18 U.S.C. § 2705(b).

[13] *See, e.g.*, 18 U.S.C. § 2703(b)(1)(B).

[14] *Id.* § 2705(b).

[15] *Id.*; *see* U.S. Dep't of Justice, *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 2 (Oct. 19, 2017).

5

## B. Factual and Procedural Background

ABC Corp. is an electronic service provider that stores its subscribers' content and non-content data on the cloud. In January 2019, ABC Corp. received a grand jury subpoena issued pursuant to 18 U.S.C. 2703(c)(2), ordering it to produce the data of one of its subscribers, concerning an employee of the subscriber. This employee is the target of an ongoing criminal investigation. The subpoena sought non-content-specific information, including, *inter alia*, records of names, physical addresses, billing information, and IP addresses associated with the employee's account. The subpoena was accompanied by an NDO, prohibiting for one year ABC Corp. from notifying any person, except ABC Corp.'s own lawyers, of the existence of the subpoena. Two months later, a Magistrate Judge issued a search warrant directing ABC Corp. to produce content-specific data for the same account. The warrant sought all evidence found in the employee's remotely stored data pertaining to several enumerated offenses being investigated by the government. The search warrant was accompanied by a second NDO, virtually identical to the first. ABC Corp. complied with both the subpoena and search warrant. The subscriber subsequently filed for bankruptcy, and a trustee has been appointed.

ABC Corp. moved before the District Court to modify the NDOs to permit it to notify the bankruptcy trustee of the existence of the subpoena and warrant, arguing that the NDOs are content-based restrictions and prior restraints that infringe

6

upon its First Amendment rights.[16] ABC Corp. asserted that it was proposing a less restrictive alternative to the content-based restriction. ABC Corp. argued that the trustee is a disinterested party, who had stepped into the shoes of the debtor and had been vetted and approved under Department of Justice guidelines. Further, ABC Corp. claimed that the trustee controlled the debtor's assertion of attorney-client privilege, had authority to respond to the government's demands, and had a duty to uncover and assert causes of action against the debtor's officers and directors. ABC Corp. proposed two alternatives, both involving disclosure of the grand jury investigation to the bankruptcy trustee with varying levels of specificity.

The District Court denied the motion to amend the NDOs. It found that § 2705(b) implicates the First Amendment rights of service providers and, without determining whether strict scrutiny applies, held that such an NDO passes strict scrutiny regardless. In its analysis, the court found that the NDOs serve the compelling governmental interest of "maintain[ing] the secrecy of the ongoing grand jury investigation and meet[ing] several of the requirements under

---

[16] The Government argues that ABC Corp. never moved to modify the search warrant NDO. However, ABC Corp. plainly raised the issue in its memorandum in support of its motion to modify and raised it again to this Court. Moreover, the Government argued against modification to both NDOs before the District Court, and the District Court referenced ABC Corp.'s request for relief from the search warrant NDO in its memorandum opinion. We will consider ABC Corp.'s challenge to both NDOs.

7

§ 2705(b)."[17]  Next, the court determined that the NDOs are narrowly tailored because the restriction on ABC Corp.'s speech is time-limited to one year.  Moreover, ABC Corp. had failed to establish that the trustee had "any particularized need to the grand jury subpoena or any additional information regarding same."[18]  Finally, the court held that the NDOs are the least restrictive means for advancing the government's interest.  It rejected ABC Corp.'s proposed alternatives because they were impractical, less effective than the NDO, and risked further disclosure to third parties.

## II. Discussion

### A. Jurisdiction and Standard of Review

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231.  Although both parties argue in favor of our exercising jurisdiction, we have "an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties' positions."[19]  Our jurisdiction flows from the collateral order exception to 28 U.S.C. § 1291.[20]  Under the collateral order doctrine, an otherwise non-final order is appealable if it "[1] finally and conclusively determines the disputed question, [2] resolves an important issue separate from the underlying merits, and [3] is effectively unreviewable after final judgment."[21]  Here, the District Court's order finally and

---

[17] JA9.
[18] JA6.
[19] *Bedrosian v. U.S. Dep't of Treasury, IRS*, 912 F.3d 144, 149 (3d Cir. 2018).
[20] *United States v. Scarfo*, 263 F.3d 80, 87-88 (3d Cir. 2001).
[21] *Id.* at 87.

conclusively rejected ABC Corp.'s First Amendment challenge to the NDO. Second, the order resolved an important issue: balancing a burden on speech against a court's power to manage grand jury proceedings. The order is also entirely divorced from the merits of the grand jury proceeding and concerns ABC Corp.'s rights, not the rights of the grand jury target.[22] Third, the NDOs will be effectively unreviewable if or when the target is prosecuted. Because all three criteria of the collateral order doctrine are met, we have appellate jurisdiction.

We exercise plenary review over questions of law.[23] Although normal deference to a district court's factual findings would necessitate clear error review, "in the First Amendment context we have an 'obligation independently to examine the whole record to ensure that the judgment does not constitute a forbidden intrusion on the field of free expression.'"[24]

---

[22] *See United States v. Mitchell*, 652 F.3d 387, 398 (3d Cir. 2011).

[23] *United States v. Marcavage*, 609 F.3d 264, 271 (3d Cir. 2010).

[24] *Id.* (quoting *Scarfo*, 263 F.3d at 91).

## B. Content-Based Restrictions and Prior Restraint

Nondisclosure orders implicate First Amendment rights because they restrict a service provider's speech.[25] Courts apply varying levels of scrutiny to incursions on speech depending on whether the restriction is content based or content neutral.[26] Content-based laws are presumptively unconstitutional and subject to strict scrutiny.[27] In contrast, intermediate scrutiny applies to content-neutral restrictions.[28] Government regulation of speech is content based if it "applies to particular speech because of the topic discussed or the idea or message expressed."[29] The NDOs in this case are content based because they prohibit ABC Corp. from conveying information about a grand jury investigation, thus "draw[ing] distinctions based on the message."[30]

The government's use of NDOs also constitutes prior restraint, a characterization typically used to describe "judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."[31] Indeed, the NDOs forbid ABC Corp. from speaking about its participation as a grand jury witness. "[P]rior restraints on speech . . . are the most serious and the least tolerable

---

[25] *See Scarfo*, 263 F.3d at 92.

[26] *Bruni v. City of Pittsburgh*, 941 F.3d 73, 84 (3d Cir. 2019).

[27] *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).

[28] *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363-64 (3d Cir. 2016).

[29] *Reed*, 135 S. Ct. at 2227.

[30] *Id.*

[31] *See Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis omitted).

infringement on First Amendment rights."[32] While prior restraints "are not unconstitutional *per se*,"[33] they are presumptively unconstitutional[34] and subject to strict scrutiny.[35]

The government asks us to apply intermediate scrutiny, essentially carving out a new area for prior restraints involving speech about non-public proceedings. Relying on *Seattle Times Co. v. Rhinehart*, [36] the government argues that the restraint on ABC Corp.'s speech is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. In *Seattle Times*, the Supreme Court declined to apply heightened scrutiny to a protective order limiting a civil litigant's ability to disseminate for its own benefit embarrassing information discovered in advance of trial.[37] But ABC Corp. is in quite a different position as a grand jury witness, and it harbors no abusive motives. ABC Corp. insists that it only wishes to disclose its receipt of service to alert an individual who can assert its subscriber's rights. Moreover, the *Seattle Times* language on which the government relies is derived from Justice Powell's concurring opinion in *Gannett Co. v.*

---

[32] *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

[33] *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975).

[34] *First Amendment Coal. v. Judicial Inquiry & Review Bd.,* 784 F.2d 467, 477 (3d Cir. 1986).

[35] *Stilp v. Contino*, 613 F.3d 405, 415 (3d Cir. 2010) ("[P]rohibit[ing] public disclosure of the fact that an Ethics Act complaint was filed, does not survive strict scrutiny and cannot be enforced.").

[36] 467 U.S. 20, 33 (1984).

[37] *Id.* at 34.

*DePasquale*, a right of access case.[38]  The right of access does not enjoy the broad protections offered to the right of free speech.[39]  In fact, Justice Powell's concurrence contrasted the right of access with a gag order, describing the latter as "a classic prior restraint" and "one of the most extraordinary remedies known to our jurisprudence."[40]  We do not find *Seattle Times* instructive under these circumstances.

We thus reject the government's invitation to apply a lesser degree of scrutiny.  Because the NDOs are content-based restrictions and presumptively unconstitutional prior restraints, we apply strict scrutiny to determine whether they are constitutionally infirm.

## C.  Strict Scrutiny

The government has the burden to establish that the NDOs survive strict scrutiny.[41]  Strict scrutiny requires the government to demonstrate that the restriction on speech "(1) serve[s] a compelling governmental interest; (2) [is] narrowly tailored to achieve that interest; and (3) [is] the least restrictive means of advancing that interest."[42]  "The purpose of the [strict scrutiny] test is to ensure that speech is restricted no further

---

[38] *Id.* at 33-34 (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 399 (1979) (Powell, J., concurring)).

[39] *First Amendment Coal.,* 784 F.2d at 477; *Stilp*, 613 F.3d at 413.

[40] *Gannet Co.*, 443 U.S. at 399 (quoting *Neb. Press Ass'n.*, 427 U.S. at 562).

[41] *See Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004).

[42] *Marcavage*, 609 F.3d at 286 (quoting *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008)).

than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished."[43]

### 1. The Restriction on Speech Serves a Compelling Governmental Interest.

In reference to the application of strict scrutiny here, the government argues that it has a compelling interest in preserving the secrecy of grand jury proceedings. But strict scrutiny sets a high bar for the government to meet. "[Government] officials may not constitutionally punish publication of the information, absent a need to further a [governmental] interest of the highest order."[44] We are convinced, however, that protecting the secrecy of an investigation is a paramount interest of the government.[45] The government's interest is particularly acute where, as here, the investigation is ongoing.[46]

Moreover, § 2705(b) sets out for us the governmental interests that must exist before a court issues an NDO. Here, the District Court and Magistrate Judge found reason to believe that notification would "seriously jeopardize the investigation

---

[43] *Ashcroft*, 542 U.S. at 666.

[44] *Butterworth v. Smith*, 494 U.S. 624, 632 (1990) (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979)).

[45] *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").

[46] *See id.* at 222 ("[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.").

. . . by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates."[47]  In denying ABC Corp.'s motion to amend, the District Court found that the NDOs serve a compelling governmental interest in maintaining the secrecy of the ongoing grand jury investigation and meet several requirements under § 2705(b).  We agree.

ABC Corp. concedes that the government asserts a compelling interest in preventing notice to the target of the investigation.  But ABC Corp. "misperceives the breadth of the compelling interest that underlies" the restriction on speech.[48]  The government's interest in grand jury secrecy is not limited to avoiding notification to the target.  The Supreme Court has identified several reasons to maintain grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free

---

[47] JA39, JA45 (citing § 2705(b)(2), (3), (5)).
[48] *See Williams-Yulee v. Florida Bar*, 575 U.S. 433, 435 (2015).

14

and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.[49]

To be sure, these reasons include avoiding consequences that might flow from alerting the target. But the Supreme Court's reasons additionally relate to the grand jury's ability to freely deliberate, the desire for unfettered testimony by witnesses, and the protection of the target from the assumption of guilt.[50] Consistent with these concerns, § 2705(b) prohibits disclosure to "any other person" and not just to the target of the investigation. Therefore, we must next consider whether the NDOs are narrowly drawn and the least restrictive means to preserve grand jury secrecy, not just whether the restriction avoids alerting the target of the investigation.

---

[49] *Douglas Oil Co.*, 441 U.S. at 219 n.10 (alteration in original) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958)).

[50] *Id.*; *see also Sells Eng'g Inc.*, 463 U.S. at 424 ("Grand jury secrecy . . . is as important for the protection of the innocent as for the pursuit of the guilty.") (internal quotation marks omitted). *But see Butterworth*, 494 U.S. at 634 ("[R]eputational interests alone cannot justify the proscription of truthful speech.").

## 2. The Restriction on Speech is Narrowly Tailored.

The District Court found that the NDOs are narrowly tailored because they are limited in time to one year. ABC Corp. argues that time limitations are not enough to pass constitutional muster and that restrictions must be also be tailored in scope. To this end, ABC Corp. characterizes the NDOs as a "total ban" on its speech. We agree that a temporal limitation alone may not be enough to satisfy strict scrutiny.[51] The ban here is not, however, a total ban.

Courts consistently distinguish between disclosure of information that a witness has independent of his participation in grand jury proceedings and information the witness learns as a result of his participation.[52] This approach strikes a "balance" between First Amendment rights and the government's "interests in preserving the confidentiality of its

---

[51] *See United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005) ("A prior restraint is not constitutionally inoffensive merely because it is temporary.").

[52] *Butterworth*, 494 U.S. at 632 ("[W]e deal only with respondent's right to divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury."); *First Amendment Coal.*, 784 F.2d at 479 (holding that confidentiality requirement can prevent witnesses from disclosing proceedings, with the exception of their own testimony); *see also Seattle Times*, 467 U.S. at 34 ("[A] party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes.").

grand jury proceedings."[53]   Here, the NDOs prohibit ABC Corp. only from speaking about the existence of the government's requests—information it learned of by its participation as a grand jury witness.[54]   The NDOs do not prohibit ABC Corp. from discussing the government's requests abstractly, as service providers have done by disclosing the number of data requests and NDOs they receive in public docket civil complaints.   This can hardly be described as a "total ban" on speech.   The NDOs only proscribe speech that would reveal the existence of this particular grand jury investigation to a non-participant, a measure narrowly tailored to preserve the secrecy of this grand jury proceeding.

### 3. The Restriction on Speech is the Least Restrictive Means of Advancing the Governmental Interest.

ABC Corp. contends that the government can accomplish its compelling interest through less restrictive means.   "[I]f the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so."[55]  "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the

---

[53] *See Butterworth*, 494 U.S. at 630-31.

[54] *See id.* at 636 (Scalia, J., concurring) ("[A] witness'[s] disclosure of the grand jury proceedings . . . is knowledge he acquires not 'on his own' but only by virtue of being made a witness.").

[55] *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002).

alternative will be ineffective to achieve its goals."[56]  ABC Corp. proposes two alternatives:  (1) permission for it to notify the bankruptcy trustee of the subpoena; or (2) permission to notify the trustee of the subpoena without identifying the target email account, which according to ABC Corp., would prompt the trustee to seek more information from the District Court and enter into a protective order to restrict further dissemination.

We agree with the government that these alternatives are untenable.  They are impractical and would be ineffective in maintaining grand jury secrecy.  Disclosure by an electronic service provider to a third party undermines the government's interest in maintaining the confidentiality of an ongoing investigation.[57]  We cannot and will not assess the trustworthiness of a would-be confidante chosen by a service provider.  Simply put, "[w]e decline to wade into this swamp" of unworkable line drawing.[58]  Neither courts nor the government can be expected to vet individuals selected by service providers and determine their risk of subverting an

---

[56] *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 816 (2000).
[57] *Cf. First Amendment Coal.*, 784 F.2d at 479 ("The confidentiality requirement is reasonable and may be enforced insofar as it would prevent a person [including a witness] . . . from disclosing proceedings taking place before the Board. . . . The state interest in this respect, as in the grand jury setting, is sufficiently strong to support such a ban.").
[58] *Williams-Yulee*, 575 U.S. at 454.

ongoing investigation.  Strict scrutiny does not demand that sort of prognostication.[59]

In sum, the NDOs' gag effect remains the least restrictive means to maintain grand jury secrecy.

### III.  Conclusion

For the foregoing reasons we will affirm the order by the District Court denying ABC Corp.'s motion to amend the nondisclosure orders.

---

[59] *See id.* ("The First Amendment requires that [a speech restriction] be narrowly tailored, not that it be 'perfectly tailored.'") (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992)).